(FAX)

P. 006/032

1 Scott H. Zwillinger (019645)
  Monty L. Greek (015088)
2 Jesse T. Anderson (023072)
  ZWILLINGER & GEORGELOS P.C.
3 2425 E. Camelback Rd., Suite 600
  Phoenix, Arizona 85016
4 Tel: (602) 224-7888
  Fax: (602) 224-7889
5 E-mail: zgdocket@zglawgroup.com

6

7 Attorneys for Plaintiff

8

**SUPERIOR COURT OF ARIZONA**

9

**MARICOPA COUNTY**

10

11

12 THE BILTMORE BANK OF          )
   ARIZONA, an Arizona corporation,  )   No. _____
13                                )
                                  )   **CV2006-011379**
14            Plaintiff,          )
                                  )   **SUMMONS**
15 V                              )
                                  )
16                               )
   STEWART TITLE GUARANTY        )
17 COMPANY, a foreign corporation; )
   STEWART TITLE NORTH TEXAS,    )
18 INC., a Texas corporation; GAY )
   GRIFFIN and JOHN DOE GRIFFIN, )
19 husband and wife; JEANETT BRITO and )
   JOHN DOE BRITO, husband and wife; )
20 PANAYOTIS MANIATIS and JANE   )
   DOE MANIATIS, husband and wife; )
21 ANTONIA DAVRADOS and JOHN     )
   DOE DAVRADOS, husband and wife; )
22 ERIC WAVOMBA and JANE DOE     )
   WAVOMBA, husband and wife;    )
23 FIDELITY FUNDING MORTGAGE     )
   CORP., a dissolved Texas Corporation; )
24 FIDELITY HOMES & LOANS, an    )
   unincorporated association, trade name, )
25 or d/b/a, headquartered in Texas; )
26
27
28

**ORIGINAL**

**DELIVERED BY** RJ
**DATE** 09-11-04

IF YOU WANT THE ADVICE OF A
LAWYER, YOU MAY WISH TO CONTACT
THE LAWYER REFERRAL SERVICE AT
602-257-4434 OR ON-LINE AT
WWW.LAWYERFINDERS.ORG. LRS IS
SPONSORED BY THE MARICOPA
COUNTY BAR ASSOCIATION

1

08/11/2006 11:53 (FAX) P. 007/032

1   FIDELITY FUNDING MORTGAGE
2   CORP. of DELAWARE, a Delaware
    corporation; FIRST EMPIRE
3   FINANCIAL, LLC, an unincorporated
    association, trade name, or d/b/a,
4   headquartered in Texas;
    VERAPPRAISE, INC., a Texas
5   corporation; MCGREGOR-ECHOLS
6   GROUP, a Texas association; JEFF D.
    MCGREGOR, JR., and JANE DOE
7   MCGREGOR, husband and wife;
8   KELLY G. HILL and JOHN DOE HILL,
    husband and wife; JOHN DOES 1-10;
9   BLACK CORPORATIONS 1-15;
10  WHITE LIMITED LIABILITY
11  COMPANIES 1-15; and RED
    UNINCORPORATED ASSOCIATIONS
12  1-15.
13
14      Defendants.
15
16  THE STATE OF ARIZONA TO THE DEFENDANT:
17
18  STEWART TITLE GUARANTY COMPANY
19
20      **YOU ARE HEREBY SUMMONED** and required to appear and defend, within the
21  time applicable, in this action in this court. If served within Arizona, you must appear and
22  defend within 20 days after the service of the Summons, Complaint, and Certificate of
23  Compulsory Arbitration upon you, exclusive of the day of service. If served out of the State of
24  Arizona — whether by direct service, by registered or certified mail, or by publication — you
25  shall appear and defend within 30 days after the service of the Summons, Complaint, and
26  Certificate of Compulsory Arbitration upon you is complete, exclusive of the day of service.
27  Where process is served upon the Arizona Director of Insurance as an insurer's attorney to
28  receive service of legal process against it in this state, the insurer shall not be required to

2

1    appear, answer or plead until expiration of 40 days after date of such service upon the Director.

2    Service by registered or certified mail without the State of Arizona is complete 30 days after

3    the date of receipt by the party being served.  Service by publication is complete 30 days after

4    the date of first publication.  Direct service is complete when made.  Service upon the Arizona

5    Motor Vehicle Superintendent is complete 30 days after filing the Affidavit of Compliance and

6    return receipt or Officer's Return.  Ariz. R. Civ. Proc., Rules 4, 4.1, 4.2 and 12(a).

7

8        YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend

9    within the time applicable, judgment by default may be rendered against you for the relief

10   demanded in the Complaint.

11

12        YOU ARE CAUTIONED that in order to appear and defend, you must file an Answer

13   or proper response in writing with the Clerk of this Court, accompanied by the necessary filing

14   fee, within the time required, and you are required to serve a copy of any Answer or response

15   upon the plaintiff's attorney, whose name and address are set forth below.  Ariz. R. Civ. Proc.,

16   Rules 5 and 10; A.R.S. § 12-311.

17

18        Copies of the pleadings filed herein may be obtained by contacting the Clerk of

19   Superior Court, Maricopa County, located at 201 West Jefferson, Phoenix, Arizona.

20

21        **Requests for reasonable accommodation for persons with disabilities must be made**

22   **to the division assigned to the case by parties at least 3 judicial days in advance of a**

23   **scheduled court proceeding.**  Local Rules of Practice for the Superior Court, Maricopa

24   County, Rule 2.5(c).

25

26   ///

27   ///

28   ///

08/11/2006 11:53

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The name and address of plaintiff's attorney is:

Scott H. Zwillinger
Monty L. Greek
Jesse T. Anderson
**ZWILLINGER & GEORGELOS, P.C.**
2425 E. Camelback Rd., Ste. 600
Phoenix, Arizona 85016

SIGNED AND SEALED this date:

CLERK   MICHAEL K. JEANES, CLERK

JUL 2 8 2006

By _____
Deputy Clerk

::ODMA\PCDOCS\ZGLAW\DM\95719\$1

(FAX)

P. 009/032

08/11/2006 11:54

1  Scott H. Zwillinger (019645)
2  Monty L. Greek (015088)
   Jesse T. Anderson (023072)
3  **ZWILLINGER & GEORGHELOS P.C.**
4  2425 E. Camelback Rd., Suite 600
   Phoenix, Arizona 85016
5  Tel: (602) 224-7888
6  Fax: (602) 224-7889
   E-mail: zgdocket@zglawgroup.com
7
8  Attorneys for Plaintiff
9
10
11                                    **SUPERIOR COURT OF ARIZONA**
12                                          **MARICOPA COUNTY**
13  THE BILTMORE BANK OF                )
    ARIZONA, an Arizona corporation,    )
14                                      )
                     Plaintiff,         )    No. _____
15                                      )
    v.                                  )          CV 2006-011379
16                                      )
    STEWART TITLE GUARANTY              )         **COMPLAINT**
17  COMPANY, a foreign corporation;     )
    STEWART TITLE NORTH TEXAS,          )
18  INC., a Texas corporation; GAY      )
    GRIFFIN and JOHN DOE GRIFFIN,       )
19  husband and wife; JEANETT BRITO and )
    JOHN DOE BRITO, husband and wife;   )
20  PANAYOTIS MANIATIS and JANE         )
    DOE MANIATIS, husband and wife;     )
21  ANTONIA DAVRADOS and JOHN           )
    DOE DAVRADOS, husband and wife;     )
22  ERIC WAVOMBA and JANE DOE           )
    WAVOMBA, husband and wife;          )
23  FIDELITY FUNDING MORTGAGE           )
    CORP., a dissolved Texas Corporation; )
24  FIDELITY HOMES & LOANS, a           )
    unincorporated association, trade name, )
25  or d/b/a, headquartered in Texas;   )
26
27
28

                                          1

COPY

JUL 2 8 2006

MICHAEL K. JEANES, CLERK
G. PARRA-VALENCIA
DEPUTY CLERK

1  FIDELITY FUNDING MORTGAGE  )
   CORP. of DELAWARE, a Delaware  )
2  corporation; FIRST EMPIRE  )
   FINANCIAL, LLC, an unincorporated  )
3  association, trade name, or d/b/a,  )
   headquartered in Texas;  )
4  VERAPPRAISE, INC., a Texas  )
5  corporation; MCGREGOR-ECHOLS  )
   GROUP, a Texas association; and JEFF  )
6  D. MCGREGOR, JR., and JANE DOE  )
   MCGREGOR, husband and wife;  )
7  KELLY G. HILL and JOHN DOE HILL,  )
   a husband and wife, JOHN DOES 1-10,  )
8  BLACK CORPORATIONS 1-15,  )
   WHITE LIMITED LIABILITY  )
9  COMPANIES 1-15, RED  )
   UNINCORPORATED ASSOCIATIONS  )
10 1-15.  )
                                       )
11                     Defendants.     )
                                       )
12
13
14
15           Plaintiff for its Complaint alleges as follows:
16        1.      The Biltmore Bank of Arizona is an Arizona corporation that has a division, Axis
17 Mortgage Investments, that is, in part, in the residential mortgage business (collectively
18 Plaintiff or "Biltmore").
19        2.      Defendant Stewart Title Guaranty Company (Defendants or "Guaranty
20 Company") is a foreign corporation, whose headquarters are in Texas and, upon information
21 and belief, is incorporated in Texas.
22        3.      Defendant Stewart Title North Texas, Inc. (Defendants or "North Texas") is a
23 foreign corporation incorporated and headquartered in Texas.
24        4.      Defendant Gay Griffin (Defendants or "Griffin") is an employee of North Texas
25 and a resident of Texas.
26        5.      Defendant Jeanett Brito (Defendants or "Brito") is an employee of North Texas
27 and a resident of Texas.
28

6.   Defendant Panayotis Maniatis (Defendants or "Maniatis") is a resident of Texas.

7.   Defendant Antonia Davrados (Defendants or "Davrados") is a resident of Texas, and licensed by the Texas Department of Savings and Mortgage Lending as a loan officer.

8.   Defendant Eric Wavomba (Defendants or "Wavomba") is a resident of Texas, and licensed by the Texas Department of Savings and Mortgage Lending as a mortgage broker.

9.   Defendant Fidelity Funding Mortgage Corp. (Defendants or "Fidelity Funding") is a Texas corporation that has been dissolved by the Texas Corporation Commission.

10.   Defendant Fidelity Funding Mortgage Corp. of Delaware (Defendants or "Fidelity Funding Delaware") is a Delaware corporation that, upon and information and belief, is doing business in Texas.

11.   Defendant Fidelity Homes & Loans (Defendant or "Homes & Loans") is an unincorporated association, trade name or DBA that, upon information and belief, is headquartered in Texas.

12.   Defendant First Empire Financial, LLC (Defendants or "First Empire") is an unincorporated association, trade name or DBA that, upon information and belief, is headquartered in Texas.

13.   Defendant Verappraise, Inc. (Defendants or "Verappraise") is a foreign corporation incorporated and headquartered in Texas.

14.   Defendant McGregor-Echols Group (Defendants or "McGregor-Echols") is a foreign unincorporated association headquartered in Texas.

15.   Defendant Jeff D. McGregor, Jr. (Defendants or "McGregor") is a resident of Texas and a licensed real estate appraiser.

16.   Defendant Kelly G. Hill (Defendants or "Hill") is a resident of Texas and a licensed real estate appraiser.

17.   The Defendants designated herein as "John Doe" or "Jane Doe" spouses are the spouses of the respective Defendants and are so designated because the wrongful conduct of the Defendants was engaged in for the benefit of their marital communities, thereby rendering the spouses and marital communities of Defendants liable for such conduct.

3

1    18.    The Defendants designated herein as "John Does 1-10," "Black Corporations 1-

2   15," "White Limited Liability Companies 1-15," and "Red Unincorporated Associations 1-15"

3   are as of yet unidentified entities or persons that played a role or otherwise liable for the acts

4   set forth below. Plaintiff reserves its right to amend this Complaint to include the specific name

5   of such entities or persons in a timely manner after the true identity is learned.

6

7

## JURISDICTION AND VENUE

8

9    19.    Defendants herein purposefully directed their activities to the State of Arizona

10  and consummated a transaction with an Arizona corporation, plaintiff herein.  As a result,

11  Defendants caused an event or events to occur in Arizona, and more particularly in Maricopa

12  County, out of which this action arises and which forms the basis for action.

13   20.    Accordingly, this Court has subject matter jurisdiction over this matter and

14  personal jurisdiction over each of the parties.

15   21.    Venue is proper in this Court.

16

## GENERAL ALLEGATIONS

17

18   22.    Biltmore is a federally insured private, full service bank that, among its other

19  services, provides various types of loans to businesses and individuals.

20   23.    In July of 2005, Maniatis, at the behest and direction and with the assistance of

21  the other Defendants, sought funding from Biltmore, through Axis, to purchase Lot 16 Block 3

22  THE LAKES OF SOMERSET physically located at 4600 Alexandria Drive, Colleyville, Texas

23  (the "House") from Daniel L. and Gail Crowe (collectively the "Crowes").

24   24.    At that time, upon information and belief, the listing price for the House was

25  $675,000.

26   25.    Upon information and belief, the purchase price (the "Purchase Price") of the

27  House agreed upon by Defendants and the Crowes was $670,000.

28   26.    Despite the Purchase Price, Defendants sought to obtain $750,000 in funding

28  from Biltmore.

27.     In order to obtain financing above and beyond the Purchase Price Defendants individually and collectively undertook a scheme to inflate and misrepresent the sales price of the House which they knew or reasonably should have known would induce Biltmore to loan funds well in excess of the market value of the House.

28.     Each of the acts of the Defendants, including but not limited to those set forth below, was done at the direction of or with the approval and knowledge of each of the other Defendants.

29.     Each of the Defendants benefited from each of the acts of the other Defendants, and knew or should have known that Defendants' actions were fraudulent and misleading.

30.     Each of the Defendants knew or reasonably should have known that Biltmore would rely on their fraudulent and misleading acts.

31.     As a result, based upon false and misleading information and documents supplied by Defendants and other fraudulent acts, including but not limited to those detailed below, Biltmore made two loans to Maniatis to purchase the House in the cumulative amount of $750,500 (the "Mortgages").

32.     Had said false and misleading information and documents not been supplied to Biltmore by Defendants and had Defendants not made such other fraudulent acts, Biltmore would not have made the Mortgages.

33.     Defendants were aware that but for their providing false and misleading information to Biltmore and undertaking other fraudulent acts, Biltmore would not have made the Mortgages.

## The Forged Residential Sales Contract

34.     Defendants provided to Biltmore a residential sales contract dated July 6, 2005 (the "July 6[th] Contract") which purports to be a sales contract between the Crowes and Maniatis for Maniatis to purchase the House for $790,000.

35.     Mr. Crowe's signature on the July 6th Contract is a forgery.

36.     Mr. Crowe did not sign the July 6th Contract, nor did Mr. Crowe agree to sell the House for $790,000.

08/11/2006 11:54

(FAX)

P. 015/032

1   37.   Further, Mr. Crowe's name is misspelled on the July 6th Contract.

2   38.   The July 6th Contract does not include any reference to Mrs. Crowe, the joint

3   owner of the House.

4   39.   Each of the signatures and initials contained in the July 6th Contract were signed

5   by the same person who wrote the contract.

6   40.   That person who wrote the contract was neither Mr. nor Ms. Crowe.

7   41.   Upon information and belief, Defendants prepared the July 6th Contract.

8   42.   Biltmore relied on the July 6th Contract as an accurate reflection of the agreement

9   between the Crowes and Maniatis.

10   43.   Biltmore approved the amount of the Mortgages for Maniatis based on

11   Biltmore's reliance on the purchase price of $790,000 as stated in the July 6th Contract.

12   44.   As a result of the false and misleading information contained in the July 6th

13   Contract, Biltmore loaned more money to Maniatis then it otherwise would have.

14   45.   Defendants all were or should have been aware of the actions of the other

15   Defendants and benefited from the actions of the other Defendants in creating the July 6th

16   Contract.

17   **The Second Version of the July 6th Contract**

18   46.   Defendants created a second version of the July 6th Contract (the "2nd Version of

19   the July 6th Contract") that is different from the one provided by Defendants to Biltmore.

20   47.   The 2nd Version of the July 6th Contract contains an addendum that would require

21   the Crowes to pay up to $52,000 worth of Maniatis's costs relating to the purchase of the

22   House.

23   48.   As a result of this addendum Maniatis would not incur any out-of-pocket

24   expenses relating to the purchase of the House.

25   49.   This addendum was added to the July 6th Contract at the close of escrow of the

26   House or thereafter.

27   50.   Biltmore was never provided with the 2nd Version of the July 6th Contract by

28   Defendants as part of Maniatis' purchase of the House.

1   51.   Biltmore would not have approved the Mortgages if it had been made aware that

2   Maniatis's costs were to be paid by the Crowes, or that Maniatis would not incur any out-of-

3   pocket expenses as part of his purchase of the House.

4   52.   Further, the Crowes never agreed to pay Maniatis' costs, and, in fact the Crowes

5   did not pay Maniatis' costs at the close of escrow or otherwise.

6   53.   Defendants all were or should have been aware of the actions of the other

7   Defendants and benefited from the actions of the other Defendants in creating the 2nd Version

8   of the July 6th Contract.

9

## Inflated Appraisal

10   54.   Defendants McGregor, Hill, McGregor-Echols, and Verappraise prepared an

11   Appraisal of Real Property dated June 15, 2005 with respect to the House (the "Appraisal").

12   55.   The intent of an appraisal is to establish a fair market value of the House in order

13   to ensure that the market value exceeds the amount of the Mortgages.

14   56.   The Appraisal estimates the market value of the House to be $790,000.

15   57.   The true market value of the house is far less than $790,000.

16   58.   There is no reasonable or accepted basis upon which McGregor, Hill, McGregor-

17   Echols, or Verappraise could determine that the House's market value is $790,000.

18   59.   The Appraisal falsely states that there was no relevant listing history for the

19   House.

20   60.   Biltmore relied on the Appraisal when it approved the Mortgages.

21   61.   The House was listed for at least six months at $670,000 before Maniatis agreed

22   to purchase the House for the Purchase Price.

23   62.   This listing information and the Purchase Price would have been readily

24   available to McGregor, Hill, McGregor-Echols and Verappraise and should have been included

25   in the Appraisal.

26   63.   Instead, McGregor, Hill, McGregor-Echols and Verappraise ignored the listing

27   history and the Purchase Price, and intentionally stated that there was no listing history in order

28   to defraud Biltmore and induce Biltmore to loan funds it otherwise would not have.

1  64.   Had McGregor, Hill, McGregor-Echols and Verappraise included the listing

2  history and Purchase Price in the Appraisal, it would have been clear to Biltmore that the

3  House was on the market for more than six months for $670,000, $120,000 less than the

4  purported market value of the House in the Appraisal, and Biltmore would not have provided

5  the Mortgages.

6  65.   Defendants all were or should have been aware of the actions of and benefited

7  from the actions of McGregor, Hill, McGregor-Echols, and Verappraise.

**The Closing and the Preparation of Three Settlement Statements**

8  66.   North Texas acted as settlement agent for the closing of the sale of the House

9  from the Crowes to Maniatis (the "Closing").

10

11  67.   The Closing occurred on or about August 16, 2005.

12  68.   As settlement agent, North Texas was responsible for, among other things,

13  preparing a HUD-1 Settlement Statement (the "HUD-1") for the sale of the House.

14  69.   The purpose of the HUD-1 is to provide all parties to a transaction with accurate

15  information accounting for each and every dollar involved in a particular transaction.

16  70.   There were three different versions of the HUD-1 with respect to the Closing.

17  71.   There should be only one final and certified version of the HUD-1.

18  72.   The final and certified version of the HUD-1 should be provided to each and

19  every party to a transaction, including the buyer, seller and lender.

20  73.   Griffin and/or Brito prepared each of the three HUD-1 forms.

21  74.   Each of the three HUD-1 forms contains different information, as is more

22  particularly described below.

23  75.   Each of the three HUD-1 forms was selectively provided to different individuals

24  and intentionally withheld from other individuals.

25  76.   Each of the three HUD-1 forms contains an inflated sales price of $790,000.

26  77.   Defendants all were or should have been aware of the actions of and benefited

27  from the actions of the other Defendants in preparing and concealing from specific parties the

28  three HUD-1 forms.

8

## HUD-1 Provided to the Crowes at Close

78. The HUD-1 provided to the Crowes indicated that the Crowes received $368,087.50 from Maniatis at closing.

79. Given the stated sales price of $790,000, the HUD-1 provided to the Crowes at closing failed to account for approximately $120,000 in funds.

80. The HUD-1 provided to the Crowes included a fraudulently generic line item labeled "payoff" in line 506 to account for the discrepancy.

81. Upon information and belief, at the Closing, when the Crowes questioned the payoff amount in line 506, Griffin and/or Brito assured the Crowes that the payoff amount was a payoff of marketing fees related to the transaction which Griffin and/or Brito claimed is very common in these transactions.

82. Upon information and belief, at the Closing, when the Crowes questioned the $790,000 purchase price listed on the HUD-1 Griffin stated that it is not uncommon that the HUD-1 does not list the exact amount the seller actually receives due to various other costs involved in the transaction.

83. Griffin and Brito's statements to the Crowes were false and do not comport with industry standards and guidelines.

84. Griffin and Brito made these false statements in an effort to ward off any other questions from the Crowes regarding the discrepancy in the sales price and ensure that the transaction occurred.

## HUD-1 Provided to Biltmore

85. As part of the transaction, North Texas provided a HUD-1 to Biltmore containing different information from the HUD-1 provided to the Crowes at closing.

86. The HUD-1 provided to Biltmore was certified by Griffin and states that the Crowes received $488,045.19 from Maniatis at closing.

87. No information is contained in line 506 of the HUD-1 provided to Biltmore.

9

1   88.   Biltmore made the loans detailed above based on the information contained on

2   this purportedly certified HUD-1.

3   89.   Had the HUD-1 contained true and accurate information, Biltmore would not

4   have made the Mortgages.

5

### The Third HUD-1

6   90.   North Texas' escrow file contains a third HUD-1 (the "3rd HUD-1") that lists

7   $68,841.42 as a payoff in line 506, $50,746 as a seller paid closing cost in Line 507, and

8   $368,288.53 due to the Crowes.

9   91.   The 3rd HUD-1 was not provided to Biltmore or the Crowes as part of the subject

10  transaction.

11  92.   The 3rd HUD-1 is not signed by the Crowes or Maniatis.

12  93.   The 3rd HUD-1 is not certified.

13  94.   Upon information and belief, the 3rd HUD-1 was created after the fact to attempt

14  to justify the amount of the Mortgages obtained by Maniatis at the direction of and with the

15  assistance of the Defendants.

16

### The Purported Second Mortgage on the House

17  95.   Upon information and belief, the $68,841.42 payment listed in line 506 of the 3rd

18  HUD-1 was paid to First Empire from the proceeds obtained by the Mortgages as a payoff for

19  a purported second mortgage (the "Purported 2nd Mortgage") on behalf of "Daniel Crow [sic]."

20  96.   Defendants Wavomba, Davrados, Fidelity Funding, Fidelity Funding Delaware,

21  Homes & Loans, and First Empire prepared documents or directed and authorized that such

22  documents be prepared to demonstrate the existence of the Purported 2nd Mortgage.

23  97.   Defendants Wavomba, Davrados, Fidelity Funding, Fidelity Funding Delaware,

24  Homes & Loans, and First Empire delivered said documents to Defendants North Texas,

25  Griffin and Brito.

26  98.   Defendants North Texas, Griffin and Brito knew or reasonably should have

27  known that said documents were fraudulent.

28

99.     The Crowes did not seek and obtain a second mortgage on the House, nor did they approve or permit any other party to take out a second mortgage on the House.

100.    Title documents prepared at the time of Closing do not include any reference to the Purported 2nd Mortgage.

101.    The date of the Purported 2nd Mortgage is July 22, 2005, merely three weeks before the closing.

102.    Griffin and/or Brito made no mention to the Crowes that a portion of the payoff amount was allegedly going to pay off the Purported 2nd Mortgage.

103.    Upon information and belief, the Purported 2nd Mortgage does not exist.

104.    Alternatively, if the Purported 2nd Mortgage does exist, whether taken out by the Crowes or another party, Biltmore would not have made the Mortgages had it known of the Purported 2nd Mortgage?

105.    Defendants all were or should have been aware of the actions of the other Defendants and benefited from the actions of the other Defendants in creating the Purported 2nd Mortgage.

### Inaccurate 1099S Forms is Created

106.    North Texas provided to the Crowes at Closing a Real Estate 1099-S Report Filing (the "1099S Form"), as required by the Internal Revenue Service, that stated that the sales price of the House was $670,000.

107.    Title companies, such as North Texas, routinely provide purchasers with 1099S forms.

108.    It would be extremely unusual for a 1099S form to reflect anything other than the actual purchase price of the property.

109.    Although the 1099S Form provided to the Crowes accurately reflected the sales price of the House, the sales price on the 1099S did not match the sales price on any of the HUD-1 forms.

110.  When the Crowes questioned the amount of the sales price set forth in the HUD-1, Griffin and/or Brito stated that the 1099S Form would list the sales price as $670,000 and that would be the amount that would be reported to the IRS as the sales price for the House.

111.  Defendants all were or should have been aware of the actions of the other Defendants and benefited from the actions of the other Defendants in creating the 1099S Form.

**Post Closing Default**

112.  Neither Maniatis nor any other Defendants have made any payments due on the Mortgages.

113.  In fact, from the beginning neither Maniatis nor any other Defendants ever intended to make any payments due on the Mortgages.

114.  Instead, Defendants from the beginning intended to keep for themselves the funds obtained from the Mortgages.

115.  In an effort to mitigate its damage with respect to the Mortgages, Biltmore has foreclosed on the House.

116.  Despite the foreclosure, Biltmore will not be able to recover the full amount due under the Mortgages due to the fact that Biltmore was defrauded into loaning $120,000 more than the House's true market value.

117.  Biltmore has also incurred reasonable fees and costs in foreclosing on the House which it is entitled to recover.

118.  Upon information and belief, Defendants (with the exception of Guaranty Company) either intended to injure Biltmore or consciously disregarded a substantial risk of significant harm to Biltmore, justifying an award of punitive damages.

119.  In addition, Biltmore has necessarily incurred reasonable attorneys' fees and costs in bringing this action, which fees and costs Biltmore is entitled to recover pursuant to A.R.S. § 12-341.01.

12

1

2

3        120.    Biltmore incorporates the allegations contained in paragraphs 1 through 119 as

4   though fully set forth herein.

5        121.    Defendants knowingly made materially false representations to Biltmore with the

6   intent that Biltmore act upon those representations.    Biltmore was unaware that the

7   representations were false and had the right to rely and did in fact rely on the truth of the

8   representations, all to Biltmore's damage.

9        Wherefore, Biltmore requests judgment against Defendants as follows:

10       A.      For compensatory damages, together with taxable costs, in an amount to be

11  proven at trial;

12       B.      An award of punitive damages in an amount sufficient to deter future similar

13  conduct;

14       C.      Judgment for whatever additional relief as to the Court seems just and proper.

15

16

17                                    ## COUNT TWO

18                            (Conspiracy to Commit Fraud)

19       122.    Biltmore incorporates the allegations contained in paragraphs 1 through 121 as

20  though fully set forth herein.

21       123.    Defendants individually and collectively agreed to undertake those acts,

22  including but not limited to those set forth above, for the purpose of obtaining the Mortgages.

23       124.    The acts undertaken by Defendants, including but not limited to those set forth

24  above, were fraudulent and unlawful.

25       125.    Each of the Defendants individually benefited from those fraudulent and

26  unlawful acts.

27       126.    Biltmore has been defrauded and sustained damage as a direct and proximate

28  result of Defendants fraudulent and unlawful acts and Defendants agreement to collectively

   undertake such fraudulent and unlawful acts.

13

## COUNT ONE

(Fraud)

1   Wherefore, Biltmore requests judgment against Defendants as follows:

2       A.   For compensatory damages, together with taxable costs, in an amount to be

3   proven at trial;

4       B.   An award of punitive damages in an amount sufficient to deter future similar

5   conduct;

6       C.   Judgment for whatever additional relief as to the Court seems just and proper.

7

8                                        COUNT THREE

9                                    (Fraudulent Concealment)

10      127.   Biltmore incorporates the allegations contained in paragraphs 1 through 126 as

11  though fully set forth herein.

12      128.   Defendants individually and collectively knowingly and intentionally concealed

13  material information from Biltmore.

14      129.   Defendants knew that information provided to Biltmore was false, and that

15  Biltmore would have determined that said information was false had all material information

16  been provided to Biltmore.

17      130.   As a result of Defendants intentional concealment of information, Biltmore has

18  sustained damages.

19      131.   Had Defendants provided Biltmore with all material information, Biltmore would

20  not have been damaged.

21      Wherefore, Biltmore requests judgment against Defendants as follows:

22      A.   For compensatory damages, together with taxable costs, in an amount to be

23  proven at trial;

24      B.   An award of punitive damages in an amount sufficient to deter future similar

25  conduct;

26      C.   Judgment for whatever additional relief as to the Court seems just and proper.

27

28

14

1

2

## COUNT FOUR

## (Negligent Misrepresentation)

3    132.   Biltmore incorporates the allegations contained in paragraphs 1 through 131 as

though fully set forth herein.

4

5    133.   Defendants provided false information to Biltmore upon which it intended that

6    Biltmore rely.  Defendants failed to exercise reasonable care or competence in obtaining or

7    communicating the information.   Biltmore justifiably relied upon that information to its

8    damage.

9

10    Wherefore, Biltmore prays for judgment against Biltmore as follows:

11    A.    For compensatory damages, together with taxable costs, in an amount to be

proven at trial;

12

13    B.    An award of punitive damages in an amount sufficient to deter future similar

conduct;

14

15    C.    Judgment for whatever additional relief as to the Court seems just and proper.

16

17    ## COUNT FIVE

18    ## (Breach of Fiduciary Duty)

134.   Biltmore incorporates the allegations contained in paragraphs 1 through 133 as

19    though fully set forth herein.

20    135.   Defendants encouraged Biltmore to repose trust and confidence in Defendants

21    and Biltmore did so, with the belief that Defendants would provide honest and accurate

22    information to Biltmore about the transaction.   This special relationship created a fiduciary

23    duty on the part of Defendants to Biltmore.

24    136.   Defendants breached its fiduciary duty to Biltmore by among other things, taking

25    such actions to inflate and misrepresent the sales price of the House to induce Biltmore to loan

26    funds well in excess of the market value of the House.

27    Wherefore, Biltmore prays for judgment against Defendants as follows:

28

1    A.    For compensatory damages, together with taxable costs, in an amount to be
2  proven at trial;

3    B.    An award of punitive damages in an amount sufficient to deter future similar
4  conduct;

5    C.    Judgment for whatever additional relief as to the Court seems just and proper.

6

7

8                            **COUNT SIX**

9                    **(Aiding and Abetting Tortious Activity)**

10

11        137.    Biltmore incorporates the allegations contained in paragraphs 1 through 136 as
12  though fully set forth herein.

13        138.    As set forth above, Defendants have committed various torts that caused injury to
14  Biltmore.

15        139.    Defendants each individually knew that the torts committed arose out of a breach
16  of duty owed Biltmore by Defendants.

17        140.    Defendants each individually knew that their actions, including but not limited to
18  those set forth above, would substantially assist or encourage the other Defendants in their
19  breach of the duties owed Biltmore.

20        141.    As a result of Defendants each individually aiding and abetting the other
21  Defendants, Biltmore has sustained damage.

22        Wherefore, Biltmore prays for judgment against Biltmore as follows:

23    A.    For compensatory damages, together with taxable costs, in an amount to be
24  proven at trial;

25    B.    An award of punitive damages in an amount sufficient to deter future similar
26  conduct;

27    C.    Judgment for whatever additional relief as to the Court seems just and proper.

28

08/11/2006 11:56                                                                (FAX)                                    P. 026/032

## COUNT SEVEN

### (Breach of Contract)
### (Guaranty Company)

142.   Biltmore incorporates the allegations contained in paragraphs 1 through 141 as though fully set forth herein.

143.   Guaranty Company delivered a closing protection letter (the "Closing Protection Letter") which governs the closing of the House.

144.   The Closing Protection Letter states as follows:

The Company will replace your settlement funds that are lost after receipt of such funds by such licensed Texas agent or licensed direct operation as a direct, proximate result of the fraud or dishonesty of such licensed Texas agent or licensed Texas direct corporation.

145.   The Closing Protection Letter creates a contract between Biltmore and Guaranty Company under which Guaranty Company is responsible for the fraud and other wrongful acts of its agents and employees that are the subject of this complaint.

146.   By issuing the Closing Protection Letter, Guaranty Company contractually obligated itself to pay Biltmore for the damages resulting from the fraud relating to the Closing.

147.   Guaranty Company has failed to pay Biltmore for the damages, despite demand that it do so.

148.   Guaranty Company's failure to pay Biltmore for the damages constitutes a breach of contract.

149.   As a direct result of said breach, Biltmore is entitled to recover damages for amounts due and owing, plus prejudgment interest, costs and other amounts provided for in the Closing Protection Letter and other applicable law.

Wherefore, Biltmore prays for judgment against Guaranty Company as follows:

A.   For compensatory damages, together with taxable costs, in an amount to be proven at trial;

17

1

2      B.    An award of punitive damages in an amount sufficient to deter future similar

3   conduct;

4

5      C.    Judgment for whatever additional relief as to the Court seems just and proper.

6

7                            **(Negligent Supervision)**

8

9      150.    Biltmore incorporates the allegations contained in paragraphs 1 through 149 as

10  though fully set forth herein.

11      151.    Defendants owed Biltmore a duty to supervise their employees in a reasonable,

12  non-negligent manner.

13      152.    Defendants breached this duty by allowing its employees to, among other things

14  engage in a persistent pattern of fraudulent, tortious, and unlawful conduct, without reprimand

15  or other consequence.

16      153.    Defendants also failed to provide proper regulations and to give proper orders to

17  prevent said fraudulent, tortious, and unlawful acts.

18      154.    Defendants knew or should have known that their employees were engaged in

19  the tortious and illegal conduct described above.

20      155.    This breach was a direct and proximate cause of Plaintiff's injuries.

21      Wherefore, Biltmore prays for judgment against Guaranty Company as follows:

22      A.    For compensatory damages, together with taxable costs, in an amount to be

23  proven at trial;

24      B.    An award of punitive damages in an amount sufficient to deter future similar

25  conduct;

26      C.    Judgment for whatever additional relief as to the Court seems just and proper.

27

28                               **COUNT NINE**

                               **(Negligent Hiring)**

      156.    Biltmore incorporates the allegations contained in paragraphs 1 through 155 as

  though fully set forth herein.

                           **COUNT EIGHT**

1    157.   Defendants owed Biltmore a duty to hire their employees in a reasonable, non-

2   negligent manner.

3    158.   Defendants breached this duty by, among other things, hiring individuals,

4   including but not limited to other defendants, and failing to ensure that said employees would

5   not engage in a persistent pattern of fraudulent, tortious conduct in violation of the law.

6    159.   This breach was a direct and proximate cause of Plaintiff's injuries.

7   Wherefore, Biltmore prays for judgment against Guaranty Company as follows:

8    A.    For compensatory damages, together with taxable costs, in an amount to be

9   proven at trial;

10   B.    An award of punitive damages in an amount sufficient to deter future similar

11   conduct;

12   C.    Judgment for whatever additional relief as to the Court seems just and proper.

13

14                                   **COUNT TEN**

15                                 **(Negligent Retention)**

16    160.   Biltmore incorporates the allegations contained in paragraphs 1 through 159 as

17   though fully set forth herein.

18    161.   Defendants owed Biltmore a duty retain its employees in a reasonable, non-

19   negligent manner.

20    162.   Defendants breached this duty by retaining their employees despite the fact that

21   Defendants knew or should have known that their employees were engaging in a persistent

22   pattern of tortuous conduct in violation of the law.

23    163.   This breach was a direct and proximate cause of Plaintiff's injuries.

24   Wherefore, Biltmore prays for judgment against Guaranty Company as follows:

25    A.    For compensatory damages, together with taxable costs, in an amount to be

26   proven at trial;

27

28

1

2    B.    An award of punitive damages in an amount sufficient to deter future similar

3    conduct;

4    C.    Judgment for whatever additional relief as to the Court seems just and proper.

5

6    DATED this 28th day of July, 2006.

7

8

9                                           ZWILLINGER & GEORGELOS P.C.

10

11                                          By: _____

12                                               Scott H. Zwillinger
                                                 Monty L. Greek
13                                               Jesse T. Anderson
                                                 2425 E. Camelback Rd., Ste.600
14                                               Phoenix, Arizona 85016
                                                 Attorneys for Plaintiff
15

16

17

18

19

20

21

22

23

24

25

26

27

28

20

(FAX)                                    P. 030/032

COPY

JUL 2 8 2006

MICHAEL K. JEANES, CLERK
L. CUMMINGS
DEPUTY CLERK

1  Scott H. Zwillinger (019645)
2  Monty L. Greek (015088)
   Jesse T. Anderson (023072)
3  **ZWILLINGER & GEORGELOS P.C.**
4  2425 E. Camelback Rd., Suite 600
   Phoenix, Arizona 85016
5  Tel: (602) 224-7888
6  Fax: (602) 224-7889
   E-mail: zgdocket@zglawgroup.com
7
8  Attorneys for Plaintiff
9
10                SUPERIOR COURT OF ARIZONA
11
                     MARICOPA COUNTY
12
13  THE BILTMORE BANK OF          )  No. _____
    ARIZONA, an Arizona corporation, )
14                                 )       CV 2006-011379
                                   )
15                    Plaintiff,   )
                                   )  CERTIFICATE REGARDING
16  v                             )  ARBITRATION
                                   )
17  STEWART TITLE GUARANTY         )
    COMPANY, a foreign corporation; )
18  STEWART TITLE NORTH TEXAS,     )
    INC., a Texas corporation; GAY )
19  GRIFFIN and JOHN DOE GRIFFIN,  )
    husband and wife; JEANETT BRITO and )
20  JOHN DOE BRITO, husband and wife; )
    PANAYOTIS MANIATIS and JANE    )
21  DOE MANIATIS, husband and wife; )
    ANTONIA DAVRADOS and JOHN      )
22  DOE DAVRADOS, husband and wife; )
    ERIC WAVOMBA and JANE DOE      )
23  WAVOMBA, husband and wife;     )
    FIDELITY FUNDING MORTGAGE      )
24  CORP., a dissolved Texas Corporation; )
    FIDELITY HOMES & LOANS, an     )
25  unincorporated association, trade name, )
    or d/b/a, headquartered in Texas; )
26
27
28
                                    1

1  FIDELITY FUNDING MORTGAGE )
2  CORP., of DELAWARE, a Delaware )
   corporation; FIRST EMPIRE )
3  FINANCIAL, LLC, an unincorporated )
   association, trade name, or d/b/a, )
4  headquartered in Texas; )
5  VERAPPRAISE, INC., a Texas )
   corporation; MCGREGOR-ECHOLS )
6  GROUP, a Texas association; JEFF D. )
   MCGREGOR, JR., and JANE DOE )
7  MCGREGOR, husband and wife; )
   KELLY G. HILL and JOHN DOE HILL, )
8  husband and wife; JOHN DOES 1-10; )
9  BLACK CORPORATIONS 1-15; )
   WHITE LIMITED LIABILITY )
10 COMPANIES 1-15; and RED )
11 UNINCORPORATED ASSOCIATIONS )
   1-15. )
12
13                         Defendants. )
14

15    The undersigned certifies that he knows the dollar limits and any other limitations set

16 forth by the local rules of practice for Maricopa Superior Court, and further certifies that this

17 case is not subject to compulsory arbitration, as provided by Rules 72 through 76 of the

18 Arizona Rules of Civil Procedure.

19    DATED this 28th day of July, 2006.

20
21                         ZWILLINGER & GEORGELOS P.C.

22
23                         By: _____
                               Scott H. Zwillinger
24                             Monty L. Greek
                               Jesse T. Anderson
25                             2425 E. Camelback Rd., Ste. 600
                               Phoenix, Arizona 85016
26                             Attorneys for Plaintiff
27
28
                                       2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ORIGINAL filed, and a COPY mailed
this 28th day of July, 2006, to:

Court Administration
Mariopa County Superior Court
201 W. Jefferson St.
Phoenix, AZ 85003

By: _____

::ODMA\PCDOCS\GLAWDM\571921.1

3

FROM :CENTEX LITIGATION                FAX NO. :2548817964                Aug. 11 2006 02:03PM P1

**Professional Civil Process Dallas, Inc.**
2001 Bryan Street Suite 3175
Dallas, Texas 75201
Tel. (214) 748-8868

August 2, 2006

PCP REF#: D06060938

Agent Phone #: (254) 881-7800
Fax #: (254) 881-7964

Steven McCollum
PCP Waco-Agent
1747 S. Robinson Dr.
Waco TX 76706

**SERVICE OF CIVIL PROCESS ********* INFORMATION UPDATE REQUEST**
**PLEASE FILL OUT AND FAX BACK ASAP to (214) 748-1140**

Have you served:

Colon, Edwin

Cause # CACC636876
County: CORYELL
Court: 52
Type: D

___ YES     Date Served: _____/_____/_____     Time Served: _____:_____ am/pm

HOME ADD: 1017 N. 4th. St. Copperas Cove TX 76522
HOME # :
HOME # :
WORK ADD:
WORK # :

___ NO

___ Still trying to serve have made _____ attempts, address has been verified.
___ Still trying to serve have made _____ attempts, address has not been verified.
___ Bad Address (Please fax a copy of the Due Diligence Affidavit **ASAP**.)
___ No Attempted Yet

___ Return filed with court.
___ Return already mailed back to your office on _____/_____/_____.
___ Return will be mailed back to your office on _____/_____/_____.

**ALTERNATE SERVICE**

If a Rule 106 / Rule 536 Motion is needed for substitute service:
Please send the original affidavit to our office and we will have the
attorney prepare the motion and order for substituted service. We need
at least three attempts and information that proves the person resides
at the address.

___ Sent affidavit for substitute service by mail on _____/_____/_____.

Comments: _Edwin is Our Dear, per female @ resident._

**PLEASE CONTACT Nakia Stanton    at (214) 748-8868   IF YOU HAVE ANY QUESTIONS.**
**Please fill out the request and fax back to our office at (214) 748-1140.**

FROM :CENTEX LITIGATION                    FAX NO. :2548817964            Aug. 11 2006 02:03PM  P2

**Professional Civil Process Dallas, Inc.**
2001 Bryan Street, Suite 3175
Dallas, Texas 75201
Tel. (214) 748-8868

August 2, 2006

PCP REF#: D06060837

Agent Phone #: (254)  881-7800
Fax #: (254)  881-7964

Steven McCollum
PCP Waco-Agent
1717 S. Robinson Dr.
Waco TX 76706

**SERVICE OF CIVIL PROCESS ******** INFORMATION UPDATE REQUEST**
**PLEASE FILL OUT AND FAX BACK ASAP to (214) 748-8868**

Cause # CACC636876
County: CORYELL
Court: 52
Type: D

Turkali, Mark A., II

**Have you served:**

HOME ADD: 1017 N. 4th. St. Copperas Cove TX 76522
HOME #:
WORK ADD:
WORK #:

___ YES   Date Served: ___/___/___   Time Served: ___:___ am/pm

___ Return filed with court.
___ Return already mailed back to your office on ___/___/___.
___ Return will be mailed back to your office on ___/___/___.

___ NO
___ Still trying to serve have made ___ attempts, address has been verified.
___ Still trying to serve have made ___ attempts, address has not been verified.
_X_ Bad Address (Please fax a copy of the Due Diligence Affidavit ASAP.)
___ No Attempted Yet

**ALTERNATE SERVICE**

If a Rule 106 / Rule 536 Motion is needed for substitute service:
Please send the original affidavit to our office and we will have the
attorney prepare the motion and order for substituted service. We need
at least three attempts and information that proves the person resides
at the address.

Sent affidavit for substitute service by mail on ___/___/___.

Comments: _about most had been moved out_
_1 mo. @ 1st attempt._

**PLEASE CONTACT** Nakia Stanton   at (214) 748-8868   **IF YOU HAVE ANY QUESTIONS.**
**Please fill out the request and fax back to our office at (214) 748-1140.**